IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KERRY L. SLOAN,** | § | |
| **#15599062,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **CIVIL CASE NO. 3:21-CV-2684-G-BK** |
| | § | |
| **WARDEN K. ZOOK,** | § | |
| **DEFENDANT.** | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this *pro se* case was referred to the

United States magistrate judge for case management, including the issuance of findings and a

recommended disposition where appropriate.  Although Plaintiff paid the filing fee, the Court did

not issue process pending preliminary screening.  Upon review of the relevant pleadings and

applicable law, this action should be summarily **DISMISSED.**

## I.  BACKGROUND

On October 26, 2021, Plaintiff Kerry L. Sloan, a federal prisoner at FCI Seagoville,

initiated this action by filing a pleading titled *Deliberate Indifference* complaint against Warden

K. Zook.  Doc. 3 at 1.  On December 16, 2021, Sloan filed his *Complaint with Demand*, Doc. 8

at 4-8, along with another copy of the *Deliberate Indifference* complaint, Doc. 8 at 9-11

(combined, they are construed as the operative complaint).  As best the Court can glean from the

operative complaint, Sloan asserts violations of the Eighth Amendment and Due Process Clause

stemming from his confinement in the special housing unit ("SHU") from August 26 to

September 9, 2021, following a disciplinary charge.  Doc. 8 at 4, 9; Doc. 8 at 24.  He cites 42

U.S.C. § 1983, 28 U.S.C. § 1495 and 42 U.S.C. §§ 10801-10803(A), and alleges "the torts of assault, deliberate indifference, battery and negligence." Doc. 8 at 4, 9.[1]

Sloan asserts that he is 58 years old and suffers from chronic medical conditions, including post-traumatic stress disorder ("PTSD"), neuropathy, borderline high blood pressure, asthma, diabetes and a kidney condition. Doc. 8 at 4. He avers his glucose levels have been monitored closely during the past year and that he has reported his asthmatic condition and breathing difficulties to prison staff. Doc. 8 at 4-5. Sloan alleges that, despite his many ailments, he was placed in the SHU where "asbestos was exposed (unpainted) and 'friable'" and he refused to paint over the asbestos. Doc. 8 at 5. He further claims that on August 27 and 29, 2021, he suffered two diabetic episodes (pre-coma like states) for which he was treated. Doc. 8 at 6-7.

Sloan contends that the confinement of a mentally ill inmate in the SHU was unconstitutional and the conditions were unsafe. Doc. 8 at 5, 7-8. He states that he was exposed to asbestos and high temperatures of over 110 degrees and denied daily showers when the temperatures exceeded 90 degrees. Sloan also alleges that he suffered from breathing difficulties, which were ignored. Doc. 8 at 7-8. He seeks monetary, declaratory, and injunctive relief. Doc. 8 at 4, 9-11.[2]

---

[1] With the operative complaint, Sloan encloses 17 pages of exhibits, including excerpts from his medical records and disciplinary appeal and handwritten notes recounting events in the SHU. Doc. 8 at 22-29.

[2] Sloan also requests that Zook expunge a disciplinary conviction. Doc. 8 at 10. But that request is not cognizable in this civil action and should be dismissed on that basis.

As detailed below, Sloan's claims lack facial plausibility.  The operative complaint should therefore be dismissed.

## II.  ANALYSIS

Although Sloan paid the applicable filing fee, his complaint is subject to preliminary screening under 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579 (5th Cir. 1998) (finding § 1915A screening applies to all prisoners' actions against governmental entities, their officers and employees, whether or not the prisoner is proceeding *in forma pauperis*).  That section provides for the *sua sponte* dismissal of a complaint if the Court finds that it (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief.  A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint lacks an arguable basis in law when it is premised "on an indisputably meritless legal theory," *Id.* at 327, and fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

The Court must always liberally construe pleadings filed by *pro se* litigants.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers"); *Cf.* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice.").  Even under the most liberal construction, however, Sloan's remaining claims should be dismissed for failure to state a claim.

### A.  Claims Under 28 U.S.C. § 1495 and 42 U.S.C. § 10801 Lack Facial Plausibility

Sloan relies on 28 U.S.C. § 1495, in support of his claim.  Doc. 8 at 4, 9.  That statute provides damages for any person who is unjustly convicted of an offense against the United

Page **3** of **12**

States and is imprisoned. *Nyabwa v. Lychner*, 701 F. App'x. 395, 396 (5th Cir. 2017). It is not

applicable here, however. Section 1495 "come[s] into play only after a defendant has succeeded

in overturning his federal conviction and is seeking damages for wrongful conviction." *Freeman*

*v. Johnson*, 79 F. App'x 3, 3 (5th Cir. 2003). Sloan does not allege that there was a prior

adjudication that reversed or set aside his federal conviction, and the Court has found no

evidence of such. Therefore, he fails to state a claim under § 1495.

Sloan also advances a claim under 42 U.S.C. §§ 10801-10851, the Protection and

Advocacy for Individuals with Mental Illness Act ("PAMII"). Doc. 8 at 4, 9. The PAMII

provides federal funding for state protection and advocacy systems to "pursue administrative,

legal, and other appropriate remedies to ensure the protection of individuals with mental illness."

42 U.S.C. § 10805(a)(1)(B) and (C); *see Oregon Advoc. Ctr. v. Mink,* 322 F.3d 1101, 1109–10

(9th Cir. 2003). However, it does not create a private right of action. *See Smart v. Ohiku,*

CIV.A. 05-1506, 2005 WL 2037559, at *3 (E.D. La. Aug. 15, 2005) (citations omitted);

*Schlosser v. Carter*, No. 3:20-CV-434 (SRU), 2021 WL 1124280, at *14 (D. Conn. Mar. 24,

2021). Thus, Sloan cannot state a plausible claim under the PAMII.

### B. Civil Rights Claims Likewise Fail to State a Claim

Next, Sloan sues Warden Zook for violating his constitutional rights under 42 U.S.C. §

1983. Doc. 8 at 4, 9. That claim fails as well.

Section 1983 provides for redress for a violation of rights by a person acting under color

of state law. Warden Zook, a federal official acting under color of federal law, is not subject to

suit under § 1983. *See Broadway v. Block*, 694 F.2d 979, 981 (5th Cir. 1982) (holding federal

officials are not liable under § 1983).  Nevertheless, when liberally construed as a *Bivens* claim, it also lacks facial plausibility.[3]

  1. *Injunctive Relief and Official Capacity Claims Fail*

Sloan requests injunctive and monetary relief against Warden Zook in her official capacity.  Doc. 8 at 9-11.  *Bivens*, however, authorizes only money damages, not injunctive relief, against individual federal officers.  *See Patel v. Santana*, 348 F. App'x 974, 976 (5th Cir. 2009) ("[I]njunctive relief against the BOP . . . [is] a form of relief that would not be proper under *Bivens*.").  Moreover, monetary damages against Zook in her official capacity are barred by sovereign immunity because her official's actions are considered to be the actions of the federal agency by whom she is employed.  *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (citations omitted)).  Under the doctrine of sovereign immunity, the United States Government cannot be sued unless it gives its consent. *See Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) ("[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." (internal quotations and citations omitted)).  And federal agencies, such as the BOP, cannot be sued under *Bivens*.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 484-86 (1994); *Watkins v. Carter*, No. 20-40234, 2021 WL 4533206, at *3 (5th Cir. Oct. 4, 2021) (per curiam) (dismissing claim for damages against the BOP).

---

[3] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (permitting civil actions for monetary damages against federal employees for specific constitutional violations).

2. *Bivens Does Not Extend to Permit Sloan's Individual Capacity Claims*

Sloan seeks monetary damages against Zook in her individual capacity as the Warden of FCI Seagoville. Doc. 8 at 9. *Bivens*, however, does not extend to these claims as explained below. Recently, the Supreme Court reiterated that expanding *Bivens* causes of action is "a 'disfavored' judicial activity." *Egbert v. Boule*, --- U.S. ---, 142 S. Ct. 1793, 1803 (2022) (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)). "[S]eparation-of-powers principles are . . . central to the analysis" of *Bivens*' expansion, and the question is whether Congress or the courts should decide to authorize a damages suit. *Ziglar*, 137 S. Ct. at 1857.

Thus, the Supreme Court has developed a two-part test to determine whether a *Bivens* claim may proceed. *Egbert*, 142 S. Ct. at 1803. First, a court must ask whether the plaintiff's claim "presents 'a new Bivens context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* Second, if it is, the court asks whether there are "special factors counselling hesitation" in extending the *Bivens* remedy. *Ziglar*, 137 S. Ct. at 1857–60. These two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803. "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (citations omitted).

The Supreme Court has extended *Bivens* claims to only those arising from three specific factual scenarios:

> (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment, *see Bivens*, 403 U.S. at 389–90, 91 S. Ct. 1999; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment, *see Davis v. Passman*, 442

U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979); and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980).

*Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020).  "Virtually everything else is a 'new context,'" *id*. (citations omitted), because a case needs only be "different in [one] meaningful way from previous *Bivens* cases" for the context to be new, *Ziglar,* 137 S. Ct. at 1859.

Of the three recognized *Bivens* actions, Sloan's case is most like *Carlson* because it involves alleged violations under the Eighth Amendment.  The similarities end there, however.  Sloan did not die in prison because of chronic, mistreated asthma and a significant failure of the medical delivery system, as in *Carlson*.  Nor did *Carlson* involve an inmate's confinement in the SHU.  Thus, this case presents a new context.  *See Watkins*, 2021 WL 4533206, at *2 (finding Eighth Amendment claim for excessive use of force because of inmate's unwillingness to be housed with another inmate was a new context); *Glenewinkel v. Carvajal*, No. 3:20-CV-2256-B, 2022 WL 179599, at *7 (N.D. Tex. Jan. 20, 2022) (same as to Eighth Amendment claims challenging BOP's COVID-19 mitigation policies that allegedly endangered inmates and their health).

Here, "[t]his 'substantial difference in the factual context of the two cases is sufficient for this Court to conclude that the Eighth Amendment claim asserted here presents a new *Bivens* context.'"  *Manzo v. Mateware, et al.*, No. 3:19-CV-812-S-BK, 2021 WL 6284098, at *4 (N.D. Tex. Dec. 13, 2021) (citations omitted), *R. & R. adopted*, 2022 WL 48395 (N.D. Tex. Jan. 5, 2022), *aff'd on other grounds*, 2022 WL 5101930 (5th Cir. Oct. 4, 2022); *see also Vaughn v. Bassett*, No. 1:19-CV-129-C, 2022 WL 4299720, at *3 (N.D. Tex. Sep. 19, 2022) (Cummings, J.), *notice of appeal filed*, No. 22-10962 (Oct. 6, 2022) (collecting cases).

Second, there are special factors counseling hesitation in extending the *Bivens* remedy to this new context. The BOP's administrative remedy program offers Sloan an alternative method to raise his claims. *Watkins*, 2021 WL 4533206, at \*2. Since *Zigler*, many courts have recognized the BOP's administrative remedy program as an alternative process and a special factor that forecloses expansion of the *Bivens* remedy. *See Butler v. S. Porter*, 999 F.3d 287, 294 (5th Cir. 2021), *cert. denied sub nom. Butler v. Porter*, 142 S. Ct. 766 (2022). Likewise, the FTCA offers an alternative remedial scheme and, as such, weighs against inferring a new *Bivens* cause of action. *See Oliva*, 973 F.3d at 444 (citing 28 U.S.C. § 2680(h)). Additionally, courts have deferred to prison officials' decision making, and such wide-ranging deference cautions against creating a new remedy in this area. *Butler*, 999 F.3d at 295 ("'Running a prison . . . requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.'" (cleaned up) (quoting *Turner v. Safley*, 482 U.S. 78, 84–85 (1987))).

Finally, Sloan's failure to state a claim is another sound reason to exercise caution in this case. "[T]he lack of merit of the claims . . . and whether to find a remedy merge to weigh against the creation of a *Bivens* remedy." *Manzo*, 2021 WL 6284098, at \*5 (citations omitted).

a) *No Supervisory Liability*

Warden Zook may not be held liable under *Bivens* for supervisory liability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009) (holding supervisory government employees are only liable for their own misconduct, and the theories of *respondeat superior* or vicarious liability do not provide a basis for liability). Rather, to impose liability against a supervisory official, the plaintiff must establish the (1) defendant's personal involvement in the constitutional

deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Turner v. Lieutenant Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017).

Sloan broadly asserts that Zook was "responsible for reviewing all administrative appeals of disciplinary charges filed by Seagoville inmates" and "fail[ed] to take [action] to curb the physical abuse of prisoners" in the SHU. Doc. 8 at 9-10. Yet, apart from these conclusory allegations, he proffers no facts that implicate Zook's personal conduct in the incidents complained of or alludes to a causal connection between her allegedly wrongful conduct as a warden and the deliberate indifference at issue. Indeed, Sloan's daily notes from his stay in the SHU do not mention Zook or anything that she did or failed to do while he was confined there. Doc. 8 at 14-19. Thus, Sloan allegations against Zook, merely premised on supervisory liability, are insufficient to state a cognizable claim.

b)    *No Plausible Eighth Amendment or Due Process Clause Claims*

Two requirements must be met for a plaintiff to allege a constitutional violation under the Eighth Amendment related to the conditions of confinement: (1) the condition must objectively be "so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need," and (2) the court must subjectively determine whether prison officials were "deliberately indifferent to inmate health or safety." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (citations and internal quotations omitted). Sloan presents no plausible facts to satisfy the subjective requirement. As noted, he sues Zook only for supervisory liability, hence his allegations lack the requisite factual enhancement from which it could be inferred that Zook acted with deliberate indifference.

Sloan's Fourteenth Amendment due process claim against Zook—a federal official— necessarily fails. The Fourteenth Amendment pertains only to a state official's actions, *See Hill*

*v. Walker,* 718 F. App'x 243, 247 (5th Cir. 2018) (due process claims against state actors

proceed under the Fourteenth Amendment); *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir.

2000) ("The Fifth Amendment applies only to violations of constitutional rights by the United

States or a federal actor.").

Even when liberally construed as a claim under the Fifth Amendment Due Process

Clause, Sloan's allegations fail to state a plausible claim.  Absent extraordinary conditions,

administrative segregation is not an atypical and significant enough hardship to trigger the

protections of the Due Process Clause.  *See Hernandez v. Velasquez,* 522 F.3d 556, 562-63 (5th

Cir. 2008) (per curiam) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  Sloan alleges only

a 14-day period of segregation, and he does not assert any attendant extreme conditions.  *See*

*Butler*, 999 F.3d at 296 (summarizing the severity and duration of restrictive conditions that

implicate due process concerns noting that "two and a half years of segregation is a threshold of

sorts for atypicality" (citations omitted)).

Consequently, Sloan's brief period of segregation does not implicate a due process liberty

interest and so fails to state a claim.

c) *State Torts Are Not Federal Constitutional Violations*

Lastly, Sloan complains of "the torts of assault . . . battery and negligence."  Doc. 8 at 9.

State-law tort claims, however, do not implicate a federal constitutional right redressable under

*Bivens*.  *See Hull v. City of Duncanville*, 678 F.2d 582, 585 (5th Cir. 1982) ("Section 1983

imposes liability for violation of rights protected by the Constitution, not for violations of duties

of care arising out of tort law. Remedy for the latter type of injury must be sought in state court

under traditional tort-law principles." (quoting *Baker v. McCollan*, 443 U.S. 137, 146 (1979));

*see also Butts v. Martin*, 877 F.3d 571, 589 (5th Cir. 2017) (a *Bivens* action is analogous to an

action under § 1983 and as such shares the same substantive standards). Likewise, negligent

conduct by itself does not amount to a constitutional violation necessary to proceed under

*Bivens*. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986).

In sum, because Sloan's claims involve a new context and there are special factors that

counsel hesitation—alternative remedies are available to him and he fails to state plausible

constitutional claims—the Court finds that Sloan's state-law claims are not cognizable under

*Bivens* and should be dismissed.

## III. LEAVE TO AMEND

Generally "a *pro se* litigant should be offered an opportunity to amend his complaint

before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). Even so, the

Court need not grant leave to amend "if the plaintiff has already pleaded his 'best case.'" *Id.*

Here, Sloan has already amended his complaint once, and based on the legal theories and factual

scenarios advanced, he cannot, as a matter of law, state a plausible legal claim. Thus, the Court

concludes that Sloan has already pled his best case and granting further leave to amend would be

futile and cause needless delay.

## IV. CONCLUSION

For all these reasons, this action should be summarily **DISMISSED WITH**

**PREJUDICE** for failure to state a claim and for seeking monetary relief against Defendants who

are immune from such relief. *See* 28 U.S.C. § 1915A(b).

**SO RECOMMENDED** on December 4, 2022.

_____

RENEE HARRIS TOLIVER

UNITED STATES MAGISTRATE JUDGE

Page **11** of **12**

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).